**FORT CHAPLIN PARK ASSOCIATES,**
Petitioner,

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION,**
Respondent,

and

**Fort Chaplin Tenants Association,**
Intervenor.

No. 92–AA–843.

District of Columbia Court of Appeals.

Argued April 12, 1994.

Decided Nov. 10, 1994.

Vincent Mark J. Policy, with whom Richard W. Luchs, Washington, DC, was on the brief, for petitioner.

John Payton, Corp. Counsel at the time of filing, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, filed a Statement in Lieu of Brief, for respondent.

Stephen B. Mercer, Law Student, with whom Barbara Conn, Law Student, and Edward Allen, Supervising Atty., Washington, DC, were on the brief, for intervenor Ft. Chaplin Tenants' Ass'n.

Eric M. Rome, Washington, DC, filed a brief, for proposed intervenors Cleveland House Tenants' Ass'n, et al.

* *Judge* WAGNER was an *Associate Judge* of this court at the time of argument. Her status changed to *Chief Judge* on June 14, 1994.

1. Two of the units are used as medical offices.

Before WAGNER, Chief Judge,* SULLIVAN, Associate Judge, and KERN, Senior Judge.

SULLIVAN, Associate Judge:

Fort Chaplin Park Associates (housing provider) seeks review of the Decision and Order of the District of Columbia Rental Housing Commission (the Commission) which dismissed the housing provider's capital improvement petition pursuant to D.C.Code § 45–2520 (1990). The Petitioner contends that the Commission erred by reversing the Decision and Order dated April 27, 1990, of a Rental Accommodations and Conversion Division (RACD) hearing examiner (the examiner), which found that the proposed capital improvements would protect or enhance the health, safety, and security of the tenants and the habitability of the housing accommodation. We agree. Accordingly, we reverse the Commission's order reversing the hearing examiner and dismissing the housing provider's capital improvement petition.

### I.

### Factual and Procedural Background

Fort Chaplin Park (Fort Chaplin) is a multi-building rental housing accommodation consisting of 549 residential units.[1] The complex is owned by Fort Chaplin Park Associates and managed by the Charles E. Smith Management Company. On June 28, 1989, the housing provider filed a capital improvement petition (the petition) with RACD and sought a rent increase to cover the costs of proposed capital improvements[2] to the rental units. The proposed improvements included:

(1) *Kitchens:* the removal of existing features in each kitchen, which were generally 25 years old, and the installation in lieu thereof of new cabinetry and counters, new appliances, upgrade of electrical services, new flooring;

2. "Capital improvement" means an improvement or renovation other than ordinary repair, replacement, or maintenance if the improvement or renovation is deemed depreciable under the Internal Revenue Code. D.C.Code § 45–2503 (1990).

(2) *Bathroom:* the removal of existing wall-mounted sinks, medicine cabinets, and light fixtures, which were generally 25 years old, and replacement thereof with new cultured marble vanity tops with integrated sink bowl, addition of vanities, installation of new medicine cabinets, upgrade of electrical lighting, replacement of plumbing fixtures;

(3) *General:* the installation of mini blinds on each window throughout the apartment; and

(4) *Smoke Detectors and Emergency Lights:* the installation of smoke detectors and emergency battery lights in common areas of housing accommodation.[3]

The total cost of the proposed improvements was $2,793,348.97. The proposed increase to the tenants' rent ceilings was $71 per month.

### Hearing Examiner's Decision and Order

The examiner held a hearing on the petition and granted the housing provider's petition in its entirety for the proposed capital improvements, along with a $69 per month rent increase.[4] The examiner found that the proposed improvements would protect or enhance the health, safety, and security of the tenants, and the habitability of the housing accommodation. In support of his ruling, the examiner found that the "[t]he proposed im-

provements will add, in all apartments, features which do not currently exist. In addition, the replacement of existing appliances, most of which are over 25 years old, will at least protect, if not enhance the habitability of the premises."

### Rental Housing Commission Decision and Order

As a result of the examiner's decision, the tenants[5] appealed pursuant to D.C.Code § 45–2526(h) (1990)[6] to the Commission. The Commission determined that the central issue was whether the housing provider had carried its burden of proof that the proposed improvements would protect or enhance the health, safety and security of the tenants or the habitability of the housing accommodation.

The Commission defined the phrase to "enhance the habitability of the housing accommodation" to mean "improvements which not only insure the lack of [District of Columbia] housing code[7] (housing code) violations, but also, those improvements may be better than the item it replaces." For the items mentioned in the housing code, the Commission concluded that the examiner's decision on these items was not supported by substantial evidence in the record. Moreover, the Commission noted, items not mentioned in the housing code, nor already existing in the rental unit,[8] could not be considered to en-

3. Subsequently, the housing provider filed a motion to delete the installation of the smoke detectors from the petition, and the hearing examiner granted the motion. The emergency lights, however, were not withdrawn from the petition.

4. D.C.Code § 45–2520 provides, in relevant part:
   (a) On petition by the housing provider, the Rent Administrator may approve a rent adjustment to cover the cost of the capital improvements to a rental unit or housing accommodation if:
   (1) The improvement would protect or enhance the health, safety, and security of the tenants or the habitability of the housing accommodation;
   D.C.Code § 45–2520 (1990).

5. The Fort Chaplin Tenants Association intervened in the matter.

6. D.C.Code § 45–2526(h) provides:
   (h) Decisions of the Rent Administrator shall be made on the record relating to any petition

filed with the Rent Administrator. An appeal may be taken by the aggrieved party to the Rental Housing Commission within 10 days after the decision of the Rent Administrator, or the Rental Housing Commission may review a decision of the Rent Administrator on its own initiative. The Rental Housing Commission may reverse, in whole or in part, any decision of the Rent Administrator which it finds to be arbitrary, capricious, an abuse of discretion, not in accordance with the provisions of this chapter, or unsupported by substantial evidence on the record of the proceedings before the Rent Administrator, or may affirm, in whole or in part, the Rent Administrator's decision.
D.C.Code § 45–2526 (1990).

7. The District of Columbia Housing Code is codified at 14 DCMR §§ 400–900 (1991).

8. These items were blinds, vanities, microwaves, dishwashers, garbage disposals, mirrors, and cutting boards.

hance or protect the habitability of the housing accommodation. As a result, the petition was dismissed in its entirety by the Commission.

## II.

### Standard of Review

■ Our standard of review of agency decisions is well established. D.C.Code § 1–1510 requires this court to determine whether substantial evidence[9] exists in the record to support the decision, or whether the decision is arbitrary, capricious, or an abuse of discretion.[10] D.C.Code §§ 1–1509(e), 1–1510(a)(3)(A), (E); *see also Oubre v. District of Columbia*, 630 A.2d 699, 702 (D.C.1993) ("[W]e will not disturb the agency's decision if it flows rationally from the facts which are supported by substantial evidence in the record.") (quoting *Colton v. District of Columbia Dep't of Employment Servs.*, 484 A.2d 550 (D.C.1984)); *Allen v. District of Columbia Hous. Comm'n*, 538 A.2d 752, 753 (D.C. 1988) ("Both statute and case law require findings of an administrative agency to be supported by substantial evidence on the record considered as a whole.").

■ We will accord great deference to "[a]n agency's interpretation of its own regulations or of the statute which it administers...." *Columbia Realty Venture v. Rental Hous. Comm'n.*, 590 A.2d 1043, 1047 (D.C.1991) (citations omitted). An agency's decision, however, which is inconsistent with the applicable statute is afforded less defer-

ence by this court. *See also Saah v. District of Columbia Bd. of Zoning Adjustment*, 433 A.2d 1114, 1116 (D.C.1981) (when an agency's decision "rests on a question of law, the reviewing court has the greater expertise, and the agency decision is therefore accorded less deference") (citations omitted).

This court's role is not to "weigh the testimony and substitute ourselves for the trier of fact who heard the conflicting testimony, observed the adversary witnesses, and determined the weight to be accorded their testimony." *Communications Workers of America, AFL–CIO v. District of Columbia Comm'n on Human Rights*, 367 A.2d 149, 152 (D.C.1976); *see also Pendleton v. District of Columbia Bd. of Elections & Ethics*, 449 A.2d 301, 307 (D.C.1982) ("On appeal, we do not review the record of an administrative proceeding de novo....").

## III.

### Habitability of the Housing Accommodation

■ The gravamen of the tenants' claim and the Commission's decision is that the proposed improvements will not protect or enhance the habitability of the housing accommodation pursuant to D.C.Code § 45–2520.[11] The tenants concurred with the Commission's use of the housing code and the lease as an objective standard by which to measure habitability. Under the Commission's approach only items which are mentioned in the housing code, or already exist-

---

9. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Allen v. District of Columbia Rental Hous. Comm'n*, 538 A.2d 752, 753 (D.C.1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See also Jameson's Liquors, Inc. v. District of Columbia Alcoholic Beverage Control Bd.;* 384 A.2d 412, 418 (D.C.1978) ("Substantial evidence is more than a mere scintilla of evidence; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

10. See note 7, *supra.* (Commission's standard in reviewing decisions of the hearing examiner).

11. See note 5, *supra.* Although the Commission concluded that the housing provider chose to proceed under the enhance the habitability of the

housing accommodation prong, we are unpersuaded that the housing provider chose to proceed solely under this prong. In any event, we are satisfied that substantial evidence exists in the record to support a decision that the improvements would protect or enhance the health, safety, and security of the tenants. While the examiner must be detailed in his or her findings, the examiner is not required to "express the reasons why it found the basic facts as it did, explaining for example, why it favored particular testimony." *Citizens Ass'n v. District of Columbia Zoning Comm'n*, 402 A.2d 36, 45 (D.C.1979). We are satisfied that the hearing examiner considered the testimony of the witnesses, and the evidence offered, and that his decision was supported by substantial evidence.

ing in the rental unit, may enhance the habitability of the housing accommodation.

On the other hand, the housing provider argued that the record does not support the Commission's substitution of its findings for those of the hearing examiner. Our review of the record supports the housing provider's position that substantial evidence existed in the record to support the hearing examiner's rejected findings that the proposed items would enhance the habitability of the housing accommodation. *See generally American Univ. v. District of Columbia Comm'n on Human Rights,* 598 A.2d 416 (D.C.1991).

■ This court will defer to an agency's interpretation of a statute which the agency administers provided that the agency's interpretation is reasonable. *Guerra v. District of Columbia Rental Hous. Comm'n,* 501 A.2d 786, 790 (D.C.1985); *see also McCulloch v. Rental Hous. Comm'n,* 584 A.2d 1244, 1248 (D.C.1991) ("we must defer to an agency's interpretation of the statute it administers, as long as that interpretation is reasonable and not plainly wrong or inconsistent with its legislative purpose").

■ The interpretation of a statute must begin with the language itself. *See McDonald v. United States,* 496 A.2d 274, 276 (D.C.1985) ("[i]n interpreting a statute, we first look to the language of the act."). This court on numerous occasions has concluded that if the statute's language is clear and unambiguous, the statute will be given its plain meaning. *See, e.g., Neighbors United for a Safer Community v. District of Columbia Bd. of Zoning Adjustment,* 647 A.2d 793,

797 (D.C.1994) ("We will not look beyond the statute's plain meaning when the language is unambiguous and does not produce an absurd result."); *Collins v. United States,* 631 A.2d 48, 50 (D.C.1993) ("In the absence of any ambiguity in the statute, we must give effect to the statute's clearly intended meaning.").

■ D.C.Code § 45–2520 requires that the improvement *protect or enhance the habitability of the housing accommodation.* (Emphasis added.) In this case, the phrase at issue is *"enhance the habitability."* [12] (Emphasis added.) Neither enhance nor habitability are ambiguous terms. Enhance means to increase. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 753 (1971). Habitability is defined as "capable of being inhabited; reasonably fit for occupation by a tenant of the class for which it was let or of the class ordinarily occupying such a dwelling." *Id.* at 1017. Hence, the statute will be given its plain meaning. The plain meaning of § 45–2520, simply put, requires that all proposed improvements increase the habitability of the housing accommodation. We are satisfied that substantial evidence existed in the record to support the examiner's decision that each of the proposed improvements would enhance the habitability of the housing accommodation.

■ The Commission defined habitability as being limited to items (1) specifically mentioned in the housing code, or (2) already existing in the rental unit at the time of leasing.[13] We decline to accept the Commission's definition of habitability because its definition contradicts the ordinary and plain

---

**12.** In *Brandywine Ltd. Partnership v. Rental Hous. Comm'n,* 631 A.2d 415 (D.C.1993), this court was faced directly with the issue as to whether the phrase "enhance habitability" in § 45–2520 "is limited by items addressed in the D.C.Housing Code or present in the accommodation when the lease begins." Due to the fact that the Commission's order was not final, this court lacked jurisdiction and therefore, dismissed the appeal.

**13.** This definition is consistent with other Commission's decisions. *See, e.g., Albermarle Tenants Ass'n v. Albermarle Towers Co.,* CI 20,429 and CI 20,523 (RHC 1992) (relying on *Wincester Management Corp. v. Staten,* 361 A.2d 187 (D.C. 1976)) (Commission stated that "[c]learly hous-

ing code controls habitability."); *Brandywine Tenants Ass'n v. Brandywine Ltd. Partnership,* CI 20,503 (RHC 1992) ("Habitability is defined by the housing code.") (Commission found that the Code's failure to mention microwave ovens, vanities, dishwashers, or mirrors, precluded these items from being considered "to enhance habitability for purposes of the Act."); *Cleveland House Tenants Ass'n v. Shoremeade Co. Ltd. Partnership,* CI 20,481 (RHC 1992) ("[a] determination of what makes a housing accommodation habitable must begin with an examination of the housing code … [T]he addition of … items where they do not already exist cannot be considered to protect or [to] enhance habitability for purposes of the Act.").

meaning of the language set forth in the statute. Moreover, in the absence of a statement by the District of Columbia Council that the Council intended for the term habitability to be defined in such a restrictive manner, we decline to adopt this definition over the ordinary meaning of habitability. In fact, the term habitability is conspicuously absent from D.C.Code § 45–2503 (1990), which provides definitions for terms used throughout the Act. The Council was surely in a better position than this court to determine what the Council meant by the term habitability. If the Council intended any meaning other than the ordinary meaning, the Council could have indicated as much within the Act.

We caution, however, that the determination of whether a particular improvement enhances the habitability of the housing accommodation should not be made in a vacuum. This determination should be made within the context of the Rental Housing Act and its stated purposes.[14]

We emphasize that all improvements proposed in connection with a capital improvement petition should not automatically be approved merely because the improvements are newer than those that they replace, or because the proposed improvements will add new features in the housing accommodation which do not presently exist. As § 45–2502(5) demonstrates, inherent in the determination of whether a proposed improvement enhances the habitability of the housing accommodation is the requirement to balance the need for moderately priced housing against the housing provider's desire to realize a return on their investment. *Id.* The delicacy of this balancing process can not be overstated.

We recognize that where the proper balance lies on any particular item does not lend itself to an easy calculation.[15] The analysis must include, not only, a determination that the proposed item would increase the value or worth of the habitability of the housing accommodation, but also whether the proposed improvement would singularly, or in conjunction with other proposed improvements, serve to erode the availability of moderately-priced housing.

## IV.

### Conclusion

We are satisfied that substantial evidence existed in the record to support the hearing examiner's decision that the improvements would protect or enhance the habitability of the housing accommodation. Therefore, we hold that the Commission's replacement of its findings for those of the hearing examiner's was arbitrary and capricious and must be set aside. Accordingly, the hearing examiner's findings are reinstated and the decision of the District of Columbia Rental Housing Commission is reversed.

*So ordered.*

14. D.C.Code § 45–2502 provides the following: In enacting this chapter, the Council of the District of Columbia supports the following statutory purposes:
(1) To protect low- and moderate-income tenants from erosion of their income from increased housing costs;
(2) To provide incentives for the construction of new rental units and the rehabilitation of vacant rental units in the District;
(3) To continue to improve the administrative machinery for the resolution of disputes and controversies between housing providers and tenants;
(4) To protect the existing supply of rental housing from conversion to other uses; and

(5) *To prevent the erosion of moderately priced rental housing while providing housing providers and developers with a reasonable rate of return on their investments.*
D.C.Code § 45–2502 (1990). (Emphasis added.)

15. As society continues to modernize and become more technologically advanced, the determination of those items that would enhance the habitability of the housing accommodation today may not be the same items that would have enhanced the habitability ten years ago, nor the same items that may enhance the habitability ten years from now.