**Oran HIVELY, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

and

**Bell Atlantic, Inc., Washington, D.C., Intervenor.**

**No. 94–AA–1431.**

District of Columbia Court of Appeals.

Argued Nov. 7, 1995.
Decided Aug. 22, 1996.

---

Michael V. Kowalski, Washington, DC, for petitioner.

Garland Pinkston, Jr., Acting Corporation Counsel at the time the memorandum was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a memorandum in lieu of brief, for respondent.

Donald P. Maiberger, Rockville, MD, for intervenor.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and MACK, Senior Judge.

MACK, Senior Judge:

Petitioner/claimant Oran Hively seeks review of the Decision of the Director of the District of Columbia Department of Employment Services (DOES) denying his claim for a supplemental allowance under the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 36–301 *et seq.* (1993 Repl. & Supp.1995) [hereinafter "the Act"]. We affirm the Director's decision.

### I.

Mr. Hively injured his neck, shoulders, and back on or about July 18, 1984, while working for C & P Telephone Company, in the District of Columbia. He requested and began receiving temporary total disability benefits from the date of the injury. After several years, he submitted a claim for a supplemental allowance to DOES. A hearing examiner issued a compensation order denying a supplemental allowance, ruling that only those claimants with permanent total disabilities are eligible for such allowances under D.C.Code § 36–306 (1981). *Hively v. C & P Telephone Co.,* OWC No. 0060611, H & AS No. 91–964 (January 17, 1992). Mr. Hively appealed this decision to the Director of DOES, who affirmed the hearing examiner. *Hively v. C & P Telephone Co.,* Dir. Dkt. No. 92–8 (October 11, 1994). In this court, Mr. Hively filed a timely petition to review this final administrative order.

### II.

As this case presents a difficult issue of statutory interpretation, we will discuss in order, the statutory language, DOES case law, our standard of review for agency decisions, and finally, our resultant conclusion.

#### A. Statutory Language

The relevant subsection of the Act is as follows:

> When the average weekly wage has changed as provided for in § 36–305, any person who has been *totally and continuously disabled* or any widow or widower who is receiving payments for income benefits under this chapter in amounts per week less than the new maximum for total disability or death shall receive weekly from the carrier, without application, an additional supplemental allowance calculated by the Mayor in accordance with the provisions of subsections (b) and (c) of this section: Provided, that such allowance shall not commence to accrue and be payable until the average weekly wage exceeds $396.78. The Mayor shall notify the carrier of the amount of such additional supplemental allowance.

D.C.Code § 36–306(a) (1993 Repl.) (emphasis added). Whether Mr. Hively is eligible for supplemental allowances depends on what it means to be "totally and continuously disabled." *Id.* The use of the word "totally" establishes that those with "partial" disabilities are not eligible for supplemental allow-

ances. Of interest in this case, however, is the meaning of the word "continuously." The Act does not define this term, and the only temporal distinction it makes is between temporary and permanent disabilities. *Id.* § 36–308. The Act establishes that certain disabilities are presumptively permanent total disabilities, and "[i]n all other cases permanent total disability shall be determined only if, as a result of the injury, the employee is unable to earn any wages in the same or other employment." *Id.* § 36–308(1). Therefore, the issue before us is whether a claimant must be adjudged to have a "permanent total disability" in order to qualify as "totally and continuously disabled" and receive supplemental allowances.

According to Mr. Hively, an individual with a temporary total disability is eligible for supplemental allowances under this section. The Director of DOES, however, concluded that the phrase "totally and continuously" requires that the individual be totally and permanently disabled in order to receive supplemental allowances. Therefore, since the claimant had not taken the steps necessary to qualify as an individual with a "permanent" disability, he could not collect supplemental allowances.[1]

### B. Department of Employment Services Case Law

The Hearings and Adjudication Section of DOES first dealt with this issue in 1988, when a hearing examiner concluded that individuals with temporary disabilities could receive supplemental allowances. *Butler v. Pitston Brinks,*[2] OWC No. 0062058, H & AS No. 88–284 (June 24, 1988). The hearing examiner did not explain her reasoning, and distinguished the one decision relied on by the claimant. *Id.* at 3.

Following *Butler,* DOES hearing examiners deferred to this decision in order to

ensure the orderly administration of the workers' compensation system. *See Smith v. Security Storage,* OWC No. 0176751, H & AS No. 91–405, 2–3 (December 19, 1991) (citing cases following *Butler*). However, the Director of DOES never decided one of these cases on appeal, so there was not a definitive agency decision on the issue. In *Smith v. Security Storage,* the hearing examiner questioned the reasoning in *Butler* and decided that it should not be followed. *Id.* at 5. This examiner performed his own analysis of the issue, and concluded that "[b]ased upon the record evidence, a reading of the pertinent case law, and investigation of the legislative history . . . claimant is not entitled to a [§ 36–306(a) ] supplemental allowance predicated upon the receipt of temporary total disability benefits." *Id.* at 14.

The *Smith* decision was appealed to the Director, who affirmed the hearing examiner. *Smith v. Security Storage,* Dir. Dkt. No. 92–5 (January 22, 1993). This precedent was relied on in the instant case, where the Director again held that individuals with temporary disabilities could not receive supplemental allowances. *Hively v. C & P Telephone Co.,* Dir. Dkt. No. 92–8 (October 11, 1994).

### C. Standard of Review

■ Our standard of review is limited by the District of Columbia Administrative Procedure Act, D.C.Code § 1–1510(a)(3) (1992 Repl.). This court has held that

we must give great weight to any reasonable construction of a regulatory statute that has been adopted by the agency charged with its enforcement. The interpretation of the agency is binding unless it is plainly erroneous or inconsistent with the enabling statute. Consequently, we sustain the agency decision even in cases

---

1. Initially it is often helpful to look to the authoritative treatise of Professor A. Larson. 2 LARSON, THE LAW OF WORKMEN'S COMPENSATION, §§ 60.60 *et seq.* (1995). Larson provides little guidance here, however: "[b]ecause of the relative novelty of this type of provision, no standard pattern has appeared—indeed, the provisions vary so wildly that it is almost impossible to frame any general rules or observations applicable to them." *Id.* § 60.61, at 10–802. However, Larson did con-

clude, without explanation, that the cost-of-living adjustment found in the Act is applicable exclusively to permanent total disability and death benefits. *Id.* § 60.61, at 10–796 n. 11.

2. The spelling of the party "Pitston" has appeared in various forms throughout the cases and briefs. However, in the caption of the actual case it is spelled "Pitston."

in which other, contrary, constructions may be equally as reasonable as the one adopted by the agency.

*Lee v. District of Columbia Dep't of Employment Servs.,* 509 A.2d 100, 102 (D.C.1986) (citations omitted). Since DOES is responsible for administering the Act, we must sustain its interpretation "even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance." *Smith v. District of Columbia Dep't of Employment Servs.,* 548 A.2d 95, 97 (D.C.1988); *MCM Parking Co. v. District of Columbia Dep't of Employment Servs.,* 510 A.2d 1041, 1043–44 (D.C.1986); *see also Thomas v. District of Columbia Dep't of Employment Servs.,* 547 A.2d 1034, 1037–38 (D.C.1988); *Howrey & Simon v. District of Columbia Dep't of Employment Servs.,* 531 A.2d 254, 258 (D.C.1987); *Hughes v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 567, 570 (D.C.1985).

Mr. Hively, relying upon the case of *Railco Multi–Construction Co. v. Gardner,* 564 A.2d 1167 (D.C.1989), argues that this court should not defer to the Director's decision in this case because it presents a "question of law" regarding legislative intent. However, the *Railco* decision, if relevant at all, defeats Mr. Hively's claim. The question in *Railco,* as to whether a claimant's injury was covered by a federal law of 1928 or a local law of 1979, was certified to us from the federal circuit—a question not "invoking the reasons for which courts will defer to agency expertise." *Id.* at 1169. The question in petitioner's case is whether we owe deference to our local agency's interpretation of a local statute which the agency is charged with administering. We rejected a "pure question of law" argument in *Lee, supra,* in which we reviewed the decision of the Director of DOES on the issue of whether a claimant could receive workers' compensation benefits under our Act at the same time that he was collecting payments under the law of another state:

> [Petitioner] claims that because he challenges an agency interpretation of a statute—*i.e.,* because he raises "a pure

question of law" as to the availability of supplemental benefits—this court should show no deference to the agency. However, in both cases cited by the petitioner to support this assertion, the terms construed by the agency were outside its expertise.... In contrast, the interpretation here is one basic to the agency's function of awarding compensation. We repeat that the question before us is solely whether the statutory interpretation urged by the agency is a permissible one.

509 A.2d at 102 (citations omitted). Therefore, we will defer to the decision of DOES regarding the construction of the terms of the Act unless it is clearly erroneous.

### D. Conclusion

The issue in this case centers on the meaning of the words "totally and continuously." When interpreting a statute, this court has stated that we are to first look at the plain meaning of the statutory language. *J. Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 46 (D.C. 1989); *Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753–54 (D.C.1983) (en banc). However, "even where the words of a statute have a 'superficial clarity,' a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve." *Peoples Drug Stores, supra,* 470 A.2d at 754 (citations omitted). Ambiguous provisions are to be "construed with reference to the statute's manifest purpose." *Zeigler Coal Co. v. Kleppe,* 175 U.S.App.D.C. 371, 381–82, 536 F.2d 398, 408–09 (1976) (footnote omitted).

Based on these statutory principles, the petitioner argues that being disabled for the preceding year qualifies as "continuously" disabled. The petitioner bases this argument on the fact that the legislature could have used the word "permanently," but instead chose to use the word "continuously." We recognize that "continuously" and "permanently" have slightly different meanings and therefore are not entirely interchangeable words. Therefore, we understand peti-

tioner's argument and may have been persuaded by it if we were deciding this issue in the first instance. We are not in that position, however, and as a result we are inclined to recognize that there is ambiguity in the use of the word "continuously." The word is not defined in the Act, and one cannot determine from the language how long a claimant must be disabled before being considered "continuously" disabled. Therefore, recognizing this ambiguity, we must look to other factors in order to determine if the Director's decision was clearly erroneous.

We will begin by looking at the legislative history of the Act. The Act replaced the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.*, as the workers' compensation statute for the District of Columbia. The legislative history of the Act is laid out in two reports: Council of the District of Columbia, Report of the Committee on Housing and Economic Development, Bill 3–106 (Jan. 29, 1980) [hereinafter "HED Report"]; and, Council of the District of Columbia, Report of the Committee on Public Services and Consumer Affairs, Bill 3–106 (Jan. 16, 1980) [hereinafter "PS/CA Report"]. This court has noted that: "[t]he Council of the District of Columbia ( [t]he Council) was of the view that coverage and compensation under the prior law was unduly broad and generous.... The Council made clear its intent to narrow the scope of coverage as well as the amount of compensation." *Hughes, supra,* 498 A.2d at 569–70 (citing HED Report). The LHWCA only provides supplemental allowances for those who are "permanently disabled." 33 U.S.C. § 910(f) (1994). It is true that this court has stated generally that "a change in legislative language gives rise to the presumption that a change was intended in legislative result." *United States v. Brown,* 422 A.2d 1281, 1284 (D.C.1980) (citation omitted). However, in the instant case the legislative history raises an inference that the Council, by using the word "continuously" as opposed to maintaining the "permanent" language found in the LHWCA, did not intend to change coverage in this area.

In this regard, the supplemental allowance provision in the amended bill (Bill 3–106) as introduced on December 11, 1979, by Councilwoman Willie J. Hardy read as follows:

Section 7 (a) When the average weekly wage has changed as provided for in Section 6, any person who has been totally and continuously disabled for over two (2) years, or any widow or widower who is receiving payments for income benefits under this Act in amounts per week less than the new maximum for total disability or death shall receive weekly from the carrier, without application, an additional supplemental allowance calculated by the Mayor in accordance with the provisions of subsection (b) and (c)....

The HED report laid out the significant differences between the LHWCA and the proposed bill, and noted the following in terms of supplemental allowances:

(5) Under the [LHWCA], benefits received for death or total disability are annually adjusted by the percentage increase in the National Average weekly wage. As this percentage increase can not be predicted and as insurance premiums are prepaid for the coming year, insurance costs are as a result escalated to reflect this uncertainty. Bill 3–106 seeks to make supplemental payments predictable while providing an adequate increase to the recipient. Bill 3–106 sets the supplemental allowance at 3% of the maximum benefit received in the previous year.

HED Report at 10–11. This discussion implies that the only change the Council intended to make in the supplemental allowance provision of the LHWCA was to add a cap on the amount of the benefit.

Moreover, the HED report also contained a section-by-section analysis of the bill, and stated the following in reference to section 7:

Page 12 Section 7—*Benefit Adjustment*— This section allows for adjustments in benefits for *permanently* totally disabled employees and widow/widowers based on changes in the maximum compensation amount.... The supplemental payment is limited to 3% of the maximum weekly benefit received by the individual in the preceding year. This percentage limitation will permit predictability for purposes of rate setting while adequately meeting the

increased needs of the recipient due to inflation and takes into consideration the elimination of work-related costs to such recipient.

HED Report at 14 (emphasis added). Therefore, the Committee on Housing and Economic Development expressed its intention to limit supplemental allowances to individuals with permanent disabilities.

The Committee on Public Services and Consumer Affairs made recommendations and offered a substitute bill. In relation to section 7, the Committee urged the elimination of the two-year waiting period and proposed a 9% cap on the benefits. PS/CA Report at 10–11. In the final version, the supplemental allowance provision did not include the waiting period and contained a 5% cap. The "totally and continuously" language of the original bill was not changed.

In sum, the legislative history supports the Director's conclusion that individuals with temporary disabilities are not eligible for supplemental allowances. The Council intended to narrow the coverage of the LHWCA, not expand it. Any expansion of coverage would undoubtedly have been made clear in the legislative history. The fact that the HED Committee's section-by-section analysis clearly embraces the words "totally and continuously" in lieu of "permanently" leads to the conclusion that the intent was to exclude individuals with temporary disabilities from this category.

■ We can also look to policy and the statute's "manifest purpose" in order to assist us in interpreting the word "continuously." The petitioner argues that the Director's interpretation encourages claimants to give up on rehabilitation in favor of seeking permanent disability benefits. We also recognize that workers' compensation statutes are to be liberally construed for the benefit of the employee. *Railco, supra,* 564 A.2d at 1169; *Meiggs v. Associated Builders, Inc.,* 545 A.2d 631, 637 (D.C.1988), *cert. denied,* 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989). However, we also note that there is nothing preventing Mr. Hively from seeking an award of permanency now, receiving supplemental allowances, and then petitioning for a modification of benefits and

vocational rehabilitation if his disability improves such that he can return to work. Therefore, we cannot conclude that the interpretation of DOES will have the undesirable effect argued by the petitioner. We also find that the conclusion of DOES may be the most efficient, as the petitioner's interpretation would require a separate determination of whether a claimant qualifies as "continuously" disabled. In sum, there are policy arguments in support of both interpretations.

In conclusion, we recognize that the Council's use of the word "continuously" has created some ambiguity as to who is eligible for supplemental allowances. While we may have come to the opposite conclusion if we were to decide this issue in the first instance, we cannot say that the determination of DOES is "plainly erroneous or inconsistent with the enabling statute," especially since it is supported by the legislative history of the Act. *Lee, supra,* 509 A.2d at 102. Therefore, the DOES decision to exclude claimants with temporary disabilities from receiving supplemental allowances must be

*Affirmed.*

FARRELL, Associate Judge, dissenting:

I disagree with the denial of a supplemental allowance to Hively. I agree, of course, that if D.C.Code § 36–306(a) (1993) were ambiguous on the point in issue, we would defer to a permissible interpretation of the statute by the Director. But the statutory phrase "totally *and continuously* " (emphasis added) is not ambiguous in defining those persons eligible for the supplemental allowance. Its only ambiguity (more precisely: its silence) is as to when the continuous period begins, which establishes the point at which supplemental allowance payments start; as to that issue I would remand for the Director's interpretation. But the statute, in my view, requires rejection of the Director's equation of "totally and continuously" with "totally and permanently," so as to deny Hively a supplemental allowance altogether.

"Permanent disability" is a term of art under the workers' compensation statute. *See, e.g.,* D.C.Code § 36–308(1) (stating what "constitute[s] permanent total disability").

Had the legislature wanted to employ that concept in § 36–306, it knew how to do so. Instead it used the word "continuously." In ordinary usage, "continuously" means without interruption, implying temporal extension, whereas "permanent" connotes no temporal limitation.[1] The two thus describe very different conditions.[2] Moreover, the operative sentence of § 36–305(a) states that "[w]hen the average weekly wage has changed as provided for in § 36–306, any person who *has been* totally and continuously disabled ... shall receive ... an additional supplemental allowance" (emphasis added). The sentence thus refers to an uninterrupted disability in the past continuing up to the present change in the average weekly wage. Had the sentence instead read, "any person who has been ... permanently disabled," we would be left scratching our heads as to how a permanent condition can be embedded in a time period of finite duration.

The root word "continue" appears elsewhere in the statute in a manner reinforcing the distinction between "continuous" and "permanent." Section 36–308 specifies when compensation shall be paid. A person must first be "adjudged" disabled, permanently or temporarily, totally or partially; compensation is then paid only "during the *continuance*" (emphasis added) of the disability. § 36–308(1). The drafters thus understood and employed the distinction between permanent disability as an "adjud[icated]" status or condition and the continuance of that condition.[3] Significantly, in prescribing the level of compensation to be paid, § 36–308 treats identically persons with "permanent and total" disability and those with "total ... but temporary" disability: both receive 66 2/3% of the employee's average weekly wages "during the continuance of" the disability. § 36–308(1), (2). This identical treatment makes sense because, while a permanent total disability may differ from a temporary total disability in duration, both disabilities have the same effect, *i.e.*, for the duration of the disability the worker is, in the words of § 36–308(1), "unable to earn any wages in the same or other employment." Thus, the Council recognized that it would be illogical (and counter to the humanitarian purposes of the Act) to treat the two categories of disabled workers differently during the period when the effect of their disabilities is the same. In spite of this, the Director offers no reason why in providing for a *supplemental* allowance based on recalculation of the general average weekly wage (§§ 36–305, –306), the drafters would have introduced a distinction they had otherwise rejected, denying the allowance to persons with a total and continuous, but not a "permanent," disability.

In sum, the Director's interpretation of "continuously" gleans no support from the statute. Instead the Director looked, as does the majority, entirely to the legislative history of § 36–306. But, in general, we do not let such history displace the plain meaning of a statute, and in any case it provides only weak support for the Director's equation of "continuously" and "permanently." My colleagues concede that the Council departed from the language of the supplemental allowance provision of the LHWCA, and that normally we assume from such a change "that a change was intended in legislative result." *United States v. Brown,* 422 A.2d 1281, 1284 (D.C.1980) (citation omitted). The burden is thus on the Director to show that the Council intended no change by the new language.

1. *See, e.g.,* WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (1978) ("permanent": "lasting or intended to last indefinitely without change"; "continuous": "without cessation or interruption").

2. *See Fort Chaplin Park Assocs. v. District of Columbia Rental Hous. Comm'n,* 649 A.2d 1076, 1080–81 (D.C.1994) (rejecting agency definition of "habitability" and giving term its plain meaning where term was undefined in statute and explaining that "[i]f the [D.C.] Council intended any meaning other than the ordinary meaning, the Council could have indicated as much within the Act"). *See also Bates v. District of Columbia Bd. of Elections & Ethics,* 625 A.2d 891, 894 (D.C.1993) (explaining that "words of common use are generally construed according to the natural, plain and ordinary meaning").

3. The drafters also recognized that both permanent and temporary total disabilities could be "continuous." *See* § 36–308(1) (providing that benefits for permanent total disabilities "shall be paid to the employee during the *continuance* thereof") (emphasis added); § 36–308(2) (providing that benefits for temporary total disabilities "shall be paid to the employee during the *continuance* thereof") (emphasis added).

That burden is not met just by pointing to the lack of an explanation for the change in the Committee reports; in legislation making important changes in the existing coverage for workers' compensation, *see Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567 (D.C.1985), it is not surprising that a modest change as to supplemental allowances drew little attention. While the Council's intent generally was indeed to narrow coverage in the new act, *id.* at 570, that intent is realized in § 36–306 by the imposition of a cap on supplemental allowances not to exceed 5% of the maximum weekly benefit received in the preceding benefit year. § 36–306(d). It does not justify our disregarding the plain language of § 36–306(a).

The Director is thus left to rely upon a single reference in the section-by-section analysis of the original bill submitted by the Committee on Housing and Economic Development ("HED"), in which the Committee stated that § 7 of Bill 3–106 "allows for adjustments in benefits for *permanently* disabled employees...." HED Report at 14 (emphasis added). This, the majority says, "*clearly equates* the words 'totally and continuously' with 'permanently.'" *Ante* at 1163 (emphasis added). The "clarity," however, becomes obscured when we look to other portions of the HED Report. Earlier in the report, the HED Committee discussed the compliance of the proposed D.C. Workers' Compensation Act with the nineteen "essential recommendations" for a viable workers'

compensation system set forth in the 1972 report of the National Commission on State Workmen's Compensation Laws ("National Commission"). HED Report at 5. In its analysis, the HED Committee asserted that the proposed Act for the District was in "full compliance" with the following recommendation of the National Commission:

> We recommend that *total disability* benefits be paid *for the duration of the worker's disability or for life*, without any limitation as to dollar amount or time.

HED Report at 8 (emphasis added). The National Commission thus made no distinction between permanent and temporary total disabilities.[4] The duration, but not the amount, of benefits would depend on the duration of the disability. Indeed, the Commission made it clear that no limitation as to the dollar amount of benefits would be appropriate in the case of total disabilities. Under the interpretation urged by the Director and the majority, however, such a limitation would be imposed on those with temporary total disabilities, because they would not be eligible for the benefit adjustment represented by the supplemental allowance. That would not be "full compliance" with the Commission's recommendation.[5]

The majority also cites the section-by-section analysis of the proposed D.C. Act included in the report of the Committee on Public Services and Consumer Affairs ("PS/CA"). The majority explains that while the PS/CA

---

4. Moreover, this recommendation immediately followed the Commission's recommendations that permanent and temporary total disabilities be compensated at the same rate, 66⅔% of the worker's gross weekly wage, which again suggests that identical treatment was contemplated for each class of disability. *See* HED Report at 7–8. The HED Committee emphasized that the proposed D.C. Act was in "full compliance" with these recommendations as well. *See id.*

5. Later, as cited by the majority, the HED Committee described in detail the "significant differences" between the proposed D.C. Act and its predecessor, the Longshoremen's and Harbor Workers' Compensation Act. *See ante* at 1162. The majority is correct that, although the LHWCA expressly limited benefit adjustments to those workers with a permanent total disability, the only significant change noted by the HED Committee was the imposition of a cap on the

amount of the adjustment. The majority fails to discuss the fact, however, that in the same section, the HED Committee mischaracterized the persons to whom the adjustment was available under the LHWCA. Specifically, the HED Committee stated that

> [u]nder the [Longshoremen's and Harbor Workers' Compensation] Act, benefits received for death or *total disability* are annually adjusted by the percentage increase in the National Average weekly wage.

HED Report at 10 (emphasis added). This characterization standing alone would imply that workers afflicted with temporary total disabilities also would be entitled to adjustments. The fact that it may well have been a mistake only reiterates the risk of placing dispositive weight on a single statement of meaning or intent within a committee report to determine the meaning of an unambiguous statutory term.

analysis of the benefit adjustment provision recommended changes with regard to the proposed waiting period and cap on such adjustments, on which a compromise ultimately was reached, the " 'totally and continuously' language of the original bill was not changed." *Ante* at 1163. But the majority does not mention that the PS/CA Committee expressed its understanding that the benefit adjustment provision, as explained in the HED Report, applied to "totally disabled persons." *See* PS/CA Report at 10–11. No distinction was made between the treatment to be accorded workers with temporary, as opposed to permanent, total disabilities.

Thus, the legislative history is inconclusive at best, and suggests no reason for us to depart from the unambiguous meaning of the statutory word "continuously." I therefore would reverse the Director's denial of benefits based upon equating "totally and continuously" with "totally and permanently" and remand the case solely for the Director's determination of the point from which, under § 36–306(a), the period of continuous total disability should be measured.