*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-AA-464

CLARK CONSTRUCTION GROUP, INC., ET AL., PETITIONERS,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

JOHN CHAVIS, INTERVENOR.

Petition for Review of a Decision of the Compensation Review Board of the
District of Columbia Department of Employment Services
(CRB-15-14)

(Submitted February 12, 2015                    Decided August 20, 2015)

*Sarah M. Burton* was on the brief for petitioners.

*Irvin B. Nathan*, Attorney General for the District of Columbia at the time the statement was filed, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Donna M. Murasky*, Senior Assistant Attorney General, were on the statement in lieu of brief for respondent.

*Michael J. Kitzman* was on the brief for intervenor.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and REID, *Senior Judge*.

Opinion for the court by *Associate Judge* BLACKBURNE-RIGSBY.

Dissenting opinion by *Associate Judge* FISHER at page 14.

BLACKBURNE-RIGSBY, *Associate Judge*: This case asks us to decide whether an employer has the right to request a change of an injured employee's attending physician under the District of Columbia's Workers' Compensation Act ("Workers' Compensation Act" or "Act"), *see* D.C. Code §§ 32-1501 to -1545 (2012 Repl.). In this case, petitioners Clark Construction Group, Inc. ("Clark Construction") and Zurich American Insurance Co. ("Zurich"), the employer and insurance carrier, respectively, requested authorization from the Office of Workers' Compensation ("OWC") to change employee-intervenor John Chavis' attending physician via an informal conference. OWC initially granted petitioners' request, but the Compensation Review Board ("CRB") vacated the OWC's order, concluding that employers do not have the right to seek a change of an employee's treating physician under the Act. Petitioners now seek review of the CRB's legal conclusion. We conclude that the CRB's interpretation of the Act was not unreasonable. Therefore, we must affirm the CRB's conclusion that employers do not have the right to request a change of an employee's attending physician.

## I.       Factual Background

On June 22, 2012, John Chavis sustained injuries during the course of his employment as a construction worker with Clark Construction.  He sought medical treatment for pain to his neck, shoulder, and lower back, and for headaches.  Chavis also received psychiatric care from Dr. Faheem Moghal, who diagnosed Chavis with major depression and provided treatment.   Chavis was later reevaluated by Dr. Brian Schulman at the behest of petitioners.[1]  Dr. Schulman diagnosed Chavis with depressive disorder and "possibly" bipolar disorder, and believed that his work injury contributed to his mental health problems.  He also concluded that Chavis' continued "[m]yofascial pain and depression clearly are linked together, i.e., the worse his depression, the greater his anger, the more it [] manifest[s] as physical pain."  Ultimately, Dr. Schulman believed that Chavis required continued treatment, and recommended additional treatment focused on anger control and new prescription drugs because he deemed Chavis' current medication regime ineffective.

---

[1]   Dr. Schulman evaluated Chavis on January 23, 2013, and again on August 6, 2013.

Petitioners thereafter sought an informal conference with OWC seeking authorization to change Chavis' treatment with Dr. Moghal, which Chavis opposed.[2] On November 15, 2013, the parties and an OWC claims examiner held an informal conference to discuss petitioners' request.[3] Exactly what happened at this informal conference is unknown to us as it appears there is no written record of the proceeding.[4] Based on OWC's subsequent order, however, it seems that the claims examiner at least reviewed Chavis' medical records, which included a statement from Dr. Moghal that Chavis was under his psychiatric care for "major depression" and reports from the doctors treating his physical injury, along with Dr. Schulman's reports critiquing Chavis' present psychiatric care. On January 15, 2014, the claims examiner, in a two-page final order, granted petitioners' request for authorization to change Chavis' physician.[5] Specifically, with regard to

---

[2] There is no indication as to whom petitioners sought to transfer Chavis' psychiatric care to once OWC granted their request for authorization to change Chavis' physician.

[3] *See* 7 DCMR § 219.1 ("Informal procedures may be utilized by the Office to resolve in a manner acceptable to all interested parties any matter in dispute regarding a claim.").

[4] *See* 7 DCMR § 219.14 ("No stenographic record shall be made of any informal procedure and no witnesses shall be called.").

[5] If the parties cannot resolve their dispute at the close of the informal conference, the claims examiner "shall evaluate all the available information and prepare a Memorandum of Informal Conference containing recommendations."

(continued…)

Chavis' psychiatric care, the order, in a somewhat perfunctory fashion, concluded that, because Dr. Schulman indicated that Chavis required additional psychiatric care and was not at "maximum medical improvement," it was "reasonable, necessary[,] and in the best interest of [Chavis]" for petitioners' request to be granted.

Chavis appealed on two bases: (1) the order failed to specify how granting the change of physician request is consistent with the employee's best interest, and (2) the order is also inconsistent with the Act and associated regulations. On appeal, the CRB reversed the OWC's order solely on the basis of Chavis' second argument, concluding that the plain language of the Act and corresponding regulation[6] only authorizes the *employee* to request a change of treating physicians if unsatisfied, and does not mention any employer rights in this regard. The CRB

---

(…continued)

7 DCMR § 219.18. Thereafter, "[t]he parties shall have fourteen (14) working days after receipt of the Memorandum of Informal Conference within which to signify in writing whether they agree or disagree with the terms of the memorandum." *Id.* at § 219.20. After thirty-four working days, the Memorandum of Informal Conference becomes final, and "the Office shall issue a Final Order . . . ." *Id.* at § 219.22.

[6] *See* D.C. Code § 32-1507 (b)(3) (2012 Repl.) ("The employee shall have the right to choose an attending physician to provide medical care under this chapter."); 7 DCMR § 212.13 ("If the employee is not satisfied with medical care, a request for change may be made to [OWC] . . . [which] may order a change where it is found to be in the best interests of the employee.").

declined to interpret the Act as allowing an employer the right to seek a change of an employee's treating physician.  This petition for review followed.

## II.    Discussion

On review, petitioners argue that the CRB's legal conclusion was erroneous because neither the plain language of the Act nor the legislative history of the Act precludes employers from seeking a change of an employee's treating physician before the OWC.  Petitioners essentially contend that the Mayor, or her designee (in this case OWC), has the authority to order a change of treating physician whenever it is in the employee's best interests, regardless of which party brings the request.

"Our standard of review of agency decisions in workers' compensation cases is governed by the [District of Columbia's] Administrative Procedures Act."[7] Thus, we will affirm the CRB's decision "unless it is arbitrary, capricious, or

---

[7] *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1159 (D.C. 2012) (citation and internal quotation marks omitted).

otherwise an abuse of discretion and not in accordance with the law."[8] The CRB's interpretation of an administrative statute, however, is reviewed de novo, although, in recognition of agency expertise, "we accord great weight to any reasonable construction of a statute by the agency charged with its administration."[9] Accordingly, "we must sustain the [CRB's] interpretation even if a petitioner advances another reasonable interpretation . . . ."[10]

In interpreting a statute, "our 'first step' is to determine whether the statute's language is clear and unambiguous."[11] This is because "[t]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he [or she] has used."[12] Thus, "[w]hen the plain meaning of the statutory language is unambiguous," ordinarily, "judicial inquiry need go no

---

[8] *Wash. Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 992 A.2d 1276, 1280 (D.C. 2010) (citation omitted).

[9] *Fluellyn*, *supra* note 7, 54 A.3d at 1160 (citation and internal quotation marks omitted).

[10] *Smith v. District of Columbia Dep't of Emp't Servs.*, 548 A.2d 95, 97 (D.C. 1988).

[11] *Providence Hosp. v. District of Columbia Dep't of Emp't Servs.*, 855 A.2d 1108, 1112 (D.C. 2004).

[12] *Sullivan v. District of Columbia*, 829 A.2d 221, 224 (D.C. 2003) (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)).

further."[13] We will only look "beyond the ordinary meaning of the words of a statute [, such as the legislative history,] . . . where there are persuasive reasons for doing so."[14] Further, "[w]e also recognize that workers' compensation statutes are to be liberally construed for the benefit of the *employee*,"[15] and that, accordingly, "[a]mbiguous provisions are to be construed with reference to the statute's manifest purpose."[16] Keeping these principles in mind, we turn to the statutory issue at hand.

In support of their position, petitioners cite primarily to D.C. Code § 32-1507 (b)(4), which states:

> The Mayor [i.e., OWC, as her designee,] shall supervise the medical care rendered to injured employees, shall require periodic reports as to the medical care being rendered to injured employees, shall have the authority to determine the necessity, character, and sufficiency of any medical aid furnished or to be furnished, and *may order a change of physician or hospital when in his [or her] judgment such change is necessary or desirable*.

---

[13] *District of Columbia v. Cato Inst.*, 829 A.2d 237, 240 (D.C. 2003) (citations and internal quotation marks omitted).

[14] *Sullivan*, *supra* note 12, 829 A.2d at 224 (citations and internal quotation marks omitted).

[15] *Hively v. District of Columbia Dep't of Emp't Servs.*, 681 A.2d 1158, 1163 (D.C. 1996) (emphasis added).

[16] *Id.* (citations and internal quotation marks omitted).

(Emphasis added). Petitioners interpret this provision, especially the emphasized clause, as allowing the Mayor, through her designee OWC, to "unilaterally order a change in physician."

Though we tend to agree with petitioners that, based on this statutory provision, the Mayor or OWC through her supervisory powers under the Act technically has the authority to "unilaterally" order a change in an employee's attending physician, nothing in this statutory passage explicitly grants petitioners, as the employer and the insurer, the right to request a change of the employee's physician before the OWC. Petitioners cite no statutory authority that grants employers the right to seek a change of an employee's attending physician. It appears that petitioners' argument that employers have the right to spur OWC into ordering a change of physician hinges on 7 DCMR § 219, which authorizes the employer or the employee to request an informal hearing before the OWC to "resolve in a manner acceptable to all interested parties any matter in dispute regarding a claim," *id.* § 219.1, such as was done in this case.

As the CRB concluded, subsection (b)(4) cannot be read in a vacuum, but must take into account the statute "as a whole so as to avoid [a] construction that

would result in an obvious injustice."[17]  The CRB determined that the related provisions of the Workers' Compensation Act undercut petitioners' interpretation. First, the preceding subsection, § 32-1507 (b)(3), makes clear that it is the *employee* who "shall have the right to choose an attending physician to provide medical care under this chapter."[18]  The statute reserves no equivalent right for the employer to choose the employee's physician.[19]  Second, regulatory sections 7 DCMR §§ 212.12 and 212.13, state that once a physician has been selected, the *employee* may request a change of physician, which must be authorized by either the insurer, or the agency, which may grant the change "where it is found to be in the best interest of the employee."[20]  7 DCMR § 212.13.  Nothing within the Act

---

[17]  *District of Columbia v. Place*, 892 A.2d 1108, 1113 (D.C. 2006) (citation and internal quotation marks omitted).

[18]  The employee's right to choose his or her physician is restated in 7 DCMR § 212.2.

[19]  Only when, "due to the nature of the injury, the employee is unable to select a physician and the nature of the injury requires immediate treatment and care," is the employer allowed to select a physician for the employee.  D.C. Code § 32-1507 (b)(3).  Further, 7 DCMR § 212.3 makes clear that "a physician selected by the employer *shall not be considered to have been selected by the employee*." (emphasis added).

[20]  *See* 7 DCMR § 212.12 ("Once a medical care provider is selected to provide treatment under the Act, an injured employee shall not change to another medical care provider or hospital without authorization of the insurer or the Office, except in an emergency."); *Id.* at § 212.13 ("If the employee is not satisfied with

(continued…)

expressly gives employers the right to request a change of an employee's attending physician. In contrast, the Act specifically lays out the employee's right to choose an attending physician, and the right to seek a change in physician if unsatisfied with the medical care provided.

We conclude that the CRB's interpretation of D.C. Code § 32-1507 (b)(4), based on the plain meaning of the statute, is reasonable, and we need not go further.[21] Accordingly, on this record, we agree with the CRB that, under the Act, the employer may not seek a change of an employee's physician before the OWC. We also conclude that OWC, as the Mayor's designee, "may order a change of physician or hospital when in [its] judgment such change is necessary or desirable." D.C. Code § 32-1507 (b)(4).[22]

---

(…continued)
medical care, a request for change may be made to the Office. The Office may order [] a change where it is found to be in the best interest of the employee.").

[21] *See, e.g.*, *Sullivan*, *supra* note 12, 829 A.2d at 224 (stating that the intent of the legislature is found in the words expressly used in the statute); *Maita Distrib., Inc. v. DBI Beverage, Inc.*, 667 F. Supp. 2d 1140, 1147 (N.D. Cal. 2009) ("[A] court . . . may not rewrite the statute to conform to an assumed intention which does not appear[] from its language." (citation and internal quotation marks omitted)).

[22] In agreeing with the CRB's interpretation of the Act, we are mindful that different states have taken different approaches as to how an employee's physician is to be selected or changed. "Under most statutes the employee may choose his or
(continued…)

Our holding today does not, as our dissenting colleague contends, act as a "gag" on the employer, nor does it prevent the OWC from considering "the best information available," including any information that the employer may submit regarding the care that the employee is receiving. *Post* at 14-15. The issue of whether an employer can submit to the OWC *neutral* medical information regarding the employee's progress may come before us in a future case, but it is a

_____

(…continued)
her physician with the authorization of the administrative authority. Under some [state statutes] the employer designates the physician. Under other[] [state statutory schemes] the employee is allowed to select his or her physician from a panel authorized by the Board or by the employer." 8 LEX K. LARSON, LARSON'S WORKERS' COMPENSATION § 94.02 [1], at 94-11 (Mathew Bender, Rev. Ed. 2015). Thus, while some states allow the employer to seek a change of an employee's physician, those states have statutory language expressly granting the employer such a right. *See generally* CAL. LAB. CODE § 4603 (West 1975) ("If the *employer* desires a change of physicians or chiropractor, he may petition the administrative director who, upon a showing of good cause by the employer, may order the employer to provide a panel of five physicians, or if requested by the employee, four physicians and one chiropractor competent to treat the particular case, from which the employee must select one." (emphasis added)); KY. REV. STAT. ANN. § 342.020 (7) (West 2010) ("Upon motion of the *employer* . . . ." (emphasis added)); N.Y. WORKERS' COMP. LAW § 13-a (3) (McKinney 2011) ("The *employer* shall have the right to transfer the care of an injured employee from the attending physician . . . ." (emphasis added)). Accordingly, the Council for the District of Columbia is free to grant employers the right to seek a change of an employee's attending physician if it so chooses, but such a right is not implicit under workers' compensation law, and we will not confer onto employers such a right absent explicit authority. Further, our holding is in accord with the doctrine of *expressio unius est exclusio alterius*. "[A] statute that mandates a thing to be done in a given manner, or by certain persons or entities, normally implies that it shall not be done in any other manner, or by other persons or entities." *McCray v. McGee*, 504 A.2d 1128, 1130 (D.C. 1986) (citations and internal quotation marks omitted).

wholly separate inquiry from what happened here. Clark Construction was not merely submitting "neutral" medical information to the OWC regarding Chavis' medical care. Rather, Clark Construction's purpose was to explicitly seek a *change* in Chavis' attending physician, even though no provision of the Act explicitly grants the employer such a right. Given the plain language of the Workers' Compensation Act, it is not evident that the Council for the District of Columbia intended for employers to routinely file petitions to change an employee's treating physician, simply because the employer does not agree with the treating physician's diagnosis or treating plan, such as was done in this case. That would be contrary to the remedial, employee-centered nature of the Act.[23]

### III.  Conclusion

Accordingly, we affirm the CRB's decision reversing the OWC's order authorizing petitioners, the employer and insurance carrier, to change an

---

[23]  Our dissenting colleague also *sua sponte* introduces due process concerns. *Post* at 16. However, we are not convinced that there is a due process issue here. We have previously held that employees themselves do not have a due process right to a hearing for change of physician requests. *See Renard v. District of Columbia Dep't of Emp't Servs.*, 731 A.2d 413, 415 n.2 (D.C. 1999). Further, whether due process concerns arise in cases like this is not clear cut, given that different states have taken different approaches as to who can make a change of physician request. *Supra* note 22.

employee's attending physician. We conclude that the CRB's interpretation of the District of Columbia Workers' Compensation Act is reasonable. Therefore, petitioners, as the employer and insurer, were not authorized under the Act to petition OWC for authorization to change Chavis' attending physician.

*So ordered.*

FISHER, *Associate Judge*, dissenting: Under the governing statute, the Mayor has "the authority to determine the necessity, character, and sufficiency of any medical aid furnished or to be furnished, and may order a change of physician or hospital when in [her] judgment such change is necessary or desirable." D.C. Code § 32-1507 (b)(4) (2012 Repl.). Such an important decision should be well-considered, drawing upon the best information available. Yet, the Compensation Review Board held "that any request to switch physicians must come from Claimant," in effect prohibiting the employer from furnishing information which would be useful and might even be compelling. This is an unreasonable interpretation of the statute, to which we should not defer. I would reverse and remand for further proceedings.

I agree that the current regulations do not expressly permit an employer to seek a change of physicians. But neither do they prohibit such a request. Why should we gag the employer, and why should the Mayor be precluded from considering information the employer submits? Neither logic nor the statutory scheme justifies such a result.

Allowing the employer to be heard is fully consistent with the humanitarian purposes of the workers' compensation statutes, which "are to be liberally construed for the benefit of the employee." *Hively v. District of Columbia Dep't of Emp't Servs.*, 681 A.2d 1158, 1163 (D.C. 1996). The question the Mayor must consider (through her designee, the OWC) is whether a change of physicians "is necessary or desirable," D.C. Code § 32-1507 (b)(4) (2012 Repl.), that is, whether it will benefit the employee. Even when the injured employee makes the request, a change in medical care will not be ordered unless "it is found to be in the best interest of the employee." 7 DCMR § 212.13.

The CRB stated that "[t]o allow employers to force Claimants to switch to a different treating physician is not something the act and regulations contemplate." But this comment misconceives the situation. The employer is not forcing the claimant to do anything. It merely seeks to provide pertinent information to assist

the Mayor in fulfilling her duty to "supervise the medical care rendered to injured employees." D.C. Code § 32-1507 (b)(4) (2012 Repl.). And the employer should be heard because it has a decided economic interest in helping the injured employee to recover. Indeed, denying the employer a voice might raise significant due process issues.

Even Mr. Chavis recognizes that the employer or insurance carrier has a right to be heard on the question of appropriate medical care. He acknowledges in his brief that the statute "provide[s] for a tool, utilization review, that could be used to ensure that the treatment being provided was the treatment required for a claimant." Utilization review, designed to determine "the necessity, character, or sufficiency of medical care or service to an employee," clearly may be initiated by the employer. D.C. Code § 32-1507 (b)(6)(B) (2012 Repl.). *See also* 7 DCMR § 232.3 ("The employee, employer or the Office may initiate the review . . . ."). Perhaps there is a reason why the employer may initiate utilization review but should be precluded from using an informal conference to suggest that the employee needs different medical care, but neither the CRB nor the parties have explained why this should be so.

In sum, the OWC properly considered the information submitted by the employer. However, the CRB did not address whether the order authorizing a change in physicians was justified. I would reverse and remand for the CRB to consider that question.