Robert L. HUGHES, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.

Washington Metropolitan Area Transit
Authority, Intervenor.

No. 84–264.

District of Columbia Court of Appeals.
Argued Feb. 21, 1985.
Decided Oct. 4, 1985.

Joseph H. Koonz, Jr., Washington, D.C., with whom Mark J. Brice, Carolyn McKenney, and Roger C. Johnson, Washington, D.C., were on brief for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief for respondent.

Michael Zimmerman, Washington, D.C., with whom David P. Durbin, Edward J. Lopata, Steven T. Cain, and Kathy S. Tyson, Washington, D.C., were on brief for intervenor.

Before PRYOR, Chief Judge, MACK and NEWMAN, Associate Judges.

NEWMAN, Associate Judge:

Hughes petitions for review of a decision of the District of Columbia Department of Employment Services (DOES) that because his employment was not "principally localized in the District of Columbia" as required by The Workers Compensation Act (WCA), D.C.Code § 36–303(a) (1981),[1] his on-the-job injury in Virginia was not compensable under the District of Columbia statute. He contends that the decision is defective on substantive and procedural grounds. We affirm.

The facts are not in dispute. Hughes is employed by Washington Metropolitan Area Transit Authority (WMATA)[2] as a mechanic to install and service communication equipment. He resides in the District of Columbia and has worked for WMATA (and its predecessor, D.C. Transit) for 17 years, having originally been hired in the District of Columbia. While working at the Crystal City, Virginia Metro Station on November 16, 1982, he injured his shoulder. He received compensation benefits pursuant to an award from the State of Virginia covering the period from November 16, 1982 through December 12, 1982. On April 21, 1983, having returned to work several months earlier, Hughes applied to DOES for additional benefits for this injury.

For approximately six months prior to the injury, Hughes had been assigned primarily at Virginia sites. He reported to work at Metro Center (in the District of Columbia) each morning before proceeding to his assigned duty station; he returned to Metro Center each afternoon to check out. He worked approximately 60% to 70% of his time in Virginia although he worked in the District of Columbia and Maryland at times. Hughes testified that as a supervisory employee, he was required to do paperwork both in the morning and afternoon in the District of Columbia; he stated that this was a more integral and significant portion of his job than was his field work. A witness called by WMATA contradicted Hughes as to the importance of the paperwork.

A hearing was held by a Hearing Examiner at DOES. As previously noted, the sole contested issue was whether Hughes' employment was "primarily localized in the District of Columbia" within the meaning

---

1. Section 36–303(a) provides:
   Coverage.
   This chapter shall apply in respect to the injury or death of an employee of an employer, as defined in paragraphs (9) and (10) of § 36–301, irrespective of the place where the injury or death occurs provided that at the time of such injury or death this employment is principally localized in the District of Columbia....

2. WMATA was established by an Interstate Compact including the District of Columbia, Maryland and Virginia; it operates a regional transportation system. *See* D.C.Code §§ 1–2401 *et seq.* (1981).

of WCA.[3] The examiner held that it was not, relying on other Hearing Examiner decisions in about ten cases which had applied the test of where an employee worked the majority of his time to determine the "principally localized" issue. The Hearing Officer issued a Recommended Compensation Order. The Director of DOES, Matthew F. Shannon, issued a Proposed Compensation Order, denying compensation but rejecting the place of the majority of the work formulation of the Hearing Examiner as inadequate. Rather, referring to the Model Compensation Act[4] as a useful guide, the Director formulated the test as follows:

1) The place(s) of the employer's business office(s) or facility(ies) at which or from which the employee performs the principal service(s) for which he was hired; or

2) If there is no such office or facility at which the employee works, the employee's residence, the place where the contract is made and the place of performance; or

3) If neither (1) nor (2) is applicable, the employee's base of operations.

The Director stated that he anticipated that the test would be clarified and refined in future cases.

WCA replaced The Longshoreman's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.* as the statutory basis for workers' compensation in the District of Columbia. *See District of Columbia v. Greater Washington Central Labor Council, AFL–CIO,* 442 A.2d 110 (D.C.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983). The Council of the District of Columbia (The Council) was of the view that coverage and compensation under the prior law was unduly broad and generous. *See* Council of the District of Columbia, Report of the Committee on Housing and Economic Development, Bill 3–106 (Jan. 29, 1980) (Leg. Hist.). A prior statute, repealed by WCA, extended compensation coverage to an employee of an employer "carrying on any employment in the District of Columbia" without regard to where the employee worked or was injured.[5] The Supreme Court had construed this statute as giving the widest extraterritorial application coverage possible consistent with the Due Process Clause of the Constitution. *See Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 476, 67 S.Ct. 801, 805, 91 L.Ed. 1028 (1947); *see also Director, Office of Workers' Compensation Programs v. National Van Lines, Inc.,* 198 U.S. App. D.C. 239, 246, 613 F.2d 972, 979 (1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3049, 65 L.Ed.2d 1136 (1980).

Prior to 1972, the quantum of workers' compensation benefits in the District of Columbia was comparable to those paid under the Maryland and Virginia statutes, with the insurance premiums paid by employers in these three jurisdictions for compensation coverage being roughly equiva-

---

**3.** WCA does not contain a definition of the term "principally localized;" the legislative history does not provide illuminating insight into the meaning of the terms.

**4.** Council of State Governments Workmen's Compensation and Rehabilitation Law, § 7(d)(4) (1974). Section 7(d)(4) provides:

A person's employment is principally localized in this or another State when (1) his employer has a place of business in this or such other State and he regularly works at or from such place of business, or (2) if clause (1) foregoing is not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other State.

**5.** D.C.Code § 36–501 (1973) provided:

The provisions of chapter 18 of title 33, U.S.Code, including all amendments that may hereafter be made thereto, shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; except that in applying such provisions the term "employer" shall be held to mean every person carrying on any employment in the District of Columbia, and the term "employee" shall be held to mean every employee of any such person.

lent. However, as a result of amendments to LHWCA in 1972, the amount of compensation awarded increased markedly in the District of Columbia with a concomitant increase in insurance rates. In the view of the Council this placed the District of Columbia in a noncompetitive situation with Maryland and Virginia in keeping or attracting businesses. *See* Leg. Hist. *supra.* The Council made clear its intent to narrow the scope of coverage as well as the amount of compensation. *Id.* It is within this framework that the Director ruled and within which we must review his ruling.

In the WCA, the Council delegated to the Mayor broad power (including rulemaking) to administer the Act. *See, e.g.,* §§ 36-302(a), -320, -322, -330. As he was authorized to do, the Mayor delegated his authority to the Director of DOES. Mayor's Order No. 82-126, 29 D.C.Reg. 2843 (July 2, 1982).

Particularly where there is broad delegation of authority to an administrative agency, we must give deference to a reasonable construction of the regulatory statute made by the agency. *Gomillion v. District of Columbia Department of Employment Services,* 447 A.2d 449, 451 (D.C. 1982); *Hockaday v. District of Columbia Department of Employment Services,* 443 A.2d 8, 12 (D.C.1982); *Thomas v. District of Columbia Department of Labor,* 409 A.2d 164, 169 (D.C.1979). In *Gomillion, supra,* we cited with approval for this proposition such cases of the Supreme Court as *Red Lion Broadcasting Company v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969), and *SEC v. Chenery Corp.,* 332 U.S. 194, 209, 67 S.Ct. 1575, 1583, 91 L.Ed. 1995 (1947). We owe such deference whether the agency construes and refines the statute through rule making or adjudication. *See NAACP v. Federal Power Commission,* 425 U.S. 662, 668,

96 S.Ct. 1806, 1810, 48 L.Ed.2d 284 (1976); *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 293-94, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974); *SEC v. Chenery, supra. See also Pacific Gas and Electric Co. v. Federal Power Commission,* 164 U.S.App.D.C. 371, 376, 506 F.2d 33, 38 (1974).

In construing the term "principally localized in the District of Columbia," the Director gave weight to the definition contained in the Model Act, *see supra* note 3, as well as analyzed decisions of state courts construing similar language; *e.g., Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530 (Iowa 1981), and *Stapleton v. Travelers, Inc.,* 359 So.2d 1051 (La.Ct. App.), *writ denied,* 360 So.2d 1176 (1978). He then formulated the challenged definition by finding that it was a more appropriate one than that of the Model Act, or of other state definitions of similar provisions; he specifically rejected the definition relied upon by the Hearing Examiner; the so-called *Herring* test.[6] We cannot say that the definition adopted by the Director is not a reasonable one given the plain language of the statute and its legislative history. We find no error in the Director's decision that Hughes did not qualify under this test.[7]

Having rejected Hughes' substantive challenges, we turn to his procedural ones. Hughes contends that the Director's order was invalid because it violated the provisions of D.C.Code § 36-320(c) (1981) which requires that a decision be rendered within 20 days of the compensation hearing. Hughes did not raise this objection in the administrative proceeding; we need not consider it here. Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review. *See Smith v. Police and Firemen's Retire-*

---

**6.** *Herring v. Guest Services, Inc.,* OWC 0000668 (March 30, 1983).

**7.** We find no merit in Hughes' contention that the construction by the Director prevents WCA from making up for the "severely restricted"

coverage provisions of Maryland and Virginia. This argument would be appropriately addressed to the other two branches of government in the three jurisdictions.

*ment & Relief Board,* 460 A.2d 997, 999 (D.C.1983); *Arthur v. District of Columbia Nurses' Examining Board,* 459 A.2d 141, 145 n. 7 (D.C.1983). *See also Gearhart & Otis, Inc. v. SEC,* 121 U.S.App.D.C. 186, 189, 348 F.2d 798, 801 (1965).[8]

We find no merit in any of Hughes' contentions, including those we deem not to merit discussion herein, and thus we affirm.

*So ordered.*

---

**8.** If we considered this issue on the merits, we would reject it. The time limit is directory rather than mandatory. *See Chapin Street Joint Venture v. Rental Housing Commission,* 466 A.2d 414, 416 n. 1 (D.C.1983); *JBG Properties Inc. v. Office of Human Rights,* 364 A.2d 1183, 1185 (D.C.1976). To construe it otherwise might cause due process problems. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434–35, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). Federal courts have construed similar language in LHWCA as directory. *Garvey v. Director, Office of Workers' Compensation Programs,* 639 F.2d 366, 372 (7th Cir.1981); *Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers Compensation Board,* 594 F.2d 986, 987 (4th Cir.1979). When a local provision is borrowed directly from a federal statute, the Council is presumed to have borrowed the judicial construction thereof as well. *Whitt v. District of Columbia,* 413 A.2d 1301, 1303–04 (D.C. 1980).