Arthur SHIPKEY, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent,**

and

**Washington Metropolitan Area Transit Authority, Intervenor.**

No. 06–AA–1308.

District of Columbia Court of Appeals.

Argued Jan. 16, 2008.

Decided Sept. 4, 2008.

Eric M. May, Washington, DC, for petitioner.

Meaghan McLaine, Assistant Attorney General, with whom Linda Singer, Acting Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, were on the brief, for the District of Columbia.

Donna J. Henderson, with whom Carol B. O'Keeffe and Mark F. Sullivan, were on the brief, for Washington Metropolitan Area Transit Authority.

Before KRAMER, FISHER, and BLACKBURNE–RIGSBY, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

Petitioner Arthur Shipkey contests the denial of his claim for temporary total disability benefits. He seeks review of the Compensation Review Board's ("CRB") decision upholding the Administrative Law Judge's ("ALJ") denial of his claim on the grounds that jurisdiction was lacking under the District of Columbia Workers' Compensation Act of 1979[1] ("Act").

Although Mr. Shipkey was injured in Maryland, he may be eligible for compensation under the Act if his employment was "localized principally" in the District of Columbia ("the District"). *See* D.C.Code § 32–1503(a)(2). Mr. Shipkey contends that the ALJ and the CRB did not properly apply the agency's "localized principally" test because they did not properly consider Mr. Shipkey's place of work performance in determining that his employment was not "localized principally" in the District, and, thus, their decisions were not in accordance with the law. The District responds that the ALJ and CRB correctly applied the "localized principally"

---

1. D.C.Code §§ 32–1501–1545 (2001).

test and that the test itself and its application were not "clearly contrary to legislative intent." Washington Metropolitan Area Transit Authority ("WMATA"), the employer and intervenor in this case, argues that the place of performance of the principal service (plumbing) for which Mr. Shipkey was hired is not dispositive and should not be accorded greater weight than the other factors in the determination of where a claimant's employment is "localized principally." We conclude that the CRB erred in upholding the ALJ's incorrect analysis of Mr. Shipkey's claim on the first prong of the "localized principally" test,[2] interpreting the term "localized principally" to require a greater than 50% of time in cases involving three or more jurisdictions, and resolving his claim on the third prong of the test. Accordingly, we reverse and remand the case for further proceedings not inconsistent with this opinion.

## I.

Mr. Shipkey has been an employee of WMATA for the past twenty-three years. He applied in the District for his initial job as a laborer and was assigned to a location in the District, where he performed the majority of his duties. Mr. Shipkey does not recall where he entered into his employment contract with WMATA. For the three years prior to his injury, he worked as a plumber for WMATA. His duties included clearing drains and repairing plumbing, fire systems, fixtures, and leaks at WMATA facilities in the District, Virginia, and Maryland.

At the beginning of each work day, Mr. Shipkey drove from his home in Gambrills, Maryland, to the WMATA facility in Greenbelt, Maryland ("Greenbelt facility"), to park his car, report for work, wait for his assignments from his supervisor, and load his WMATA truck with tools, supplies, and parts needed for his assigned job sites for the day. Whenever a WMATA facility required service, the central WMATA office, which was located in Washington, D.C., would generate a work order called a Facility Service Request ("FSR"), which would then be routed to the appropriate service facility. These FSRs would determine where Mr. Shipkey was assigned to work on a particular day. At the end of each work day, he would return to the Greenbelt facility to park and unload the WMATA truck, record his hours, replace his tools, and complete a Daily Activities Report ("Daily Report") before driving home. On July 23, 2003, Mr. Shipkey injured his right rotator cuff while installing a water fountain at a WMATA facility in Rockville, Maryland.

Mr. Shipkey gave WMATA adequate and timely notice of his injury. WMATA voluntarily paid Mr. Shipkey temporary total disability benefits for the period of July 24, 2003, through December 3, 2003. However, WMATA suspended his benefits due to an alleged failure on Mr. Shipkey's part to accept prompt and reasonable medical care subsequent to December 3, 2003.

Mr. Shipkey brought a claim for temporary total disability benefits for the period of December 4, 2003, through the present.

---

2. The agency's "localized principally" test was deemed reasonable by this court in *Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 569 n. 3 (D.C. 1985). We discuss the test in greater detail *infra.* Although the language of the Act requires that employment is "localized principally" in the District in order to ground juris-diction, we note that the ALJ, the CRB, and our prior case law also refer to the requirement as "principally localized" or "principally located." Therefore, in this opinion, we will refer to the requirement by the statutory language of "localized principally," but will use direct quotes of the alternate terminology when appropriate.

Additionally, he sought the imposition of penalties against WMATA under D.C.Code § 32–1528(b) (Supp.2000) for its alleged bad faith delay in making payments to him from July 24 through September 29, 2003.[3]  After timely notice, a full evidentiary hearing was held on March 4, 2004, before ALJ Brown.  Three witnesses testified at the hearing: Mr. Shipkey, his WMATA supervisor Bruce Rowe, and WMATA's Third–Party Administrator workers' compensation claims representative Kellie Griffin.  The ALJ denied Mr. Shipkey's claim, concluding that because Mr. Shipkey's employment was principally located in Maryland, and not in the District, jurisdiction under the Act was lacking, and, therefore, the ALJ did not consider Mr. Shipkey's other contentions.  In so finding, the ALJ relied upon an exhibit summarizing Mr. Shipkey's hours worked at various WMATA locations, which was compiled from the time logs by his supervisor, Bruce Rowe.  This summary represented the twenty-six week period preceding Mr. Shipkey's injury, not his three-year tenure in his current position at WMATA.

Mr. Rowe acknowledged during his testimony that the allocation of the hours on the time logs, which formed the basis of his summary report, was not completely accurate because they were generally made in increments of two or four hours regardless of the precise number of hours Mr. Shipkey worked, and, therefore, did not accurately represent the time Mr. Shipkey spent in each jurisdiction.  The ALJ recognized and noted that the time Mr. Shipkey spent at the Greenbelt facility at the beginning of the day was credited to the jurisdiction of the first job site and the time spent in Greenbelt at the end of the day was credited to the jurisdiction of the last job site, and, thus, the logs "as they are maintained do not exactly detail the actual time spent at such sites."  Despite noting these inaccuracies, the ALJ relied upon the summary report that Mr. Rowe had created from the time logs in making his factual finding that Mr. Shipkey worked 391.5 hours in the District, 233.5 hours in Virginia, and 193 hours in Maryland.

On appeal, the CRB affirmed the ALJ's Order, finding that it was supported by substantial evidence in the record and in accordance with the law.  This petition for review followed.

## II.  Analysis

### A.

The CRB upheld the ALJ's denial of Mr. Shipkey's claim based upon the ALJ's conclusion that the third prong—not the first prong—of the "localized principally" test, which this court accepted as reasonable in *Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 569 n. 3 (D.C.1985), resolved the issue.  For the reasons set forth below, this was not in accordance with the law.

The District of Columbia Workers' Compensation Act ("Act") provides compensation to a claimant whose work-related injury occurs outside of the District, if at the time of the injury the employment is "localized principally" in the District.  D.C.Code § 32–1503(a)(2) (2001).  The Act does not define the term "localized principally" nor does the legislative history provide any guidance on its interpretation.  *See Hughes, supra,* 498 A.2d at 569 n. 3.  In *Hughes,* we accepted as reasonable the

---

3.  He also sought penalties against WMATA under D.C.Code § 32–1515(e) for its alleged

late filing of the notice of contraversion.

Director's[4] three-pronged test to assist in the determination of whether employment is localized principally within the District. *Id.* at 570 (applying Director's three-pronged test to claim under the 1981 Act).

■ The language of the *Hughes* test demonstrates a preference for certain factors over others. The three-pronged test determines where employment is "localized principally" based upon:

> 1) The place(s) of the employer's business office(s) or facility(ies) at which or from which the employee performs the principal service(s) for which he was hired; or
>
> 2) If there is no such office or facility at which the employee works, the employee's residence, the place where the contract is made and the place of performance; or
>
> 3) If neither (1) nor (2) is applicable, the employee's base of operations.

*Id.* at 569.

■ The pertinent inquiry for determining where the "place of employment" is under the first prong of the *Hughes* test is where the employee performs the principal services which he was hired to do; any preparation for those services is ancillary. *See Pro–Football, Inc. v. District of Columbia Dep't of Employment Servs.*, 588 A.2d 275, 279 (D.C.1991). In *Pro–Football*, we reviewed the Director's decision that the employment of professional football players was "localized principally" in the District[5], even though it was "undisputed that the amount of time spent by each player in Virginia substantially ex-

ceed[ed] the amount [of time] spent in the District." *Id.* at 277.

In *Pro–Football*, during the regular season, the players worked in the District on days when there was a home game and then only for a few hours during the football game itself. *Id.* By contrast, during both the pre-season and regular season, the players spent approximately eight hours a day, five days a week practicing for the games in Virginia and approximately six weeks every year at pre-season training in Pennsylvania. *Id.* Despite the fact that the "overwhelming majority of the players' employment-related time was spent in Virginia," this court affirmed the Director's application of the first prong of the *Hughes* test and concluded the players' employment was "localized principally" in the District because "the principal service for which a player is hired by the Redskins is to play regularly scheduled games" based upon a recognition that "[j]ust as an actor's rehearsals are ancillary to his performance on the stage, so a professional athlete's practice is merely preparatory to the game." *Id.* at 279.

Similarly, in this case, Mr. Shipkey is employed as a plumber. While he spends the beginning and end of his day at the Greenbelt, Maryland facility awaiting plumbing assignments or loading his needed tools, equipment, and supplies in the truck he uses to travel to the WMATA facility that required his plumbing services, it is undisputed that Mr. Shipkey does his plumbing work elsewhere, namely WMATA facilities in the District, Virginia, and Maryland. Just as the football play-

---

4. The CRB was created following the Council of the District of Columbia's passage of the D.C. Workers' Compensation Administrative Reform and Anti–Fraud Amendment Act of 2004. D.C.Code § 32–1521.01 (2001). Decisions issued by the Director prior to the establishment of the CRB are accorded persuasive

authority by the CRB. 7 DCMR § 255.7 (2005).

5. At the time of the *Pro–Football* case, the Washington Redskins played at RFK Stadium, which is located in Washington, D.C. *See* 588 A.2d at 277.

ers in *Pro–Football* practiced and trained for their upcoming games, so does Mr. Shipkey prepare for his plumbing performance by assembling the necessary tools so that he may be ready when the time comes for his plumbing services. As in *Pro–Football,* the employer's other facilities where Mr. Shipkey performed the principal service for which he was hired—plumbing—are easily discernible from the record.

Despite the fact that Mr. Shipkey performs his principal service for which he was hired (plumbing) at a number of WMATA facilities in three jurisdictions and that data for his performance time in all three jurisdictions was available, the CRB (and ALJ) disregarded the preference in the *Hughes* test for resolution of the "localized principally" issue under the first prong (principal duties performed at the employer's facilities) or second prong (place of performance) instead of under the third prong (base of operations). *See Hughes, supra,* 498 A.2d at 569. Instead, the CRB erred in upholding the ALJ's finding that the first prong "[wa]s not controlling." The first prong requires that the ALJ determine the employer's facility or facilities "at which or from which the [claimant] performs the principal service(s) for which he was hired." *Hughes, supra,* 498 A.2d at 569. Thus, neither the ALJ nor the CRB adequately considered and analyzed whether there were other employer facilities "at which" Mr. Shipkey actively performed his duties as a plumber and whether the time spent in the respective jurisdictions yielded an answer.

Instead, the CRB adopted the ALJ's conclusory observation that "there [we]re three jurisdictions in which he performed his plumbing duties, and none appear to be the 'principal' place (none represent a clear or significant majority, none appear to represent a rare or unusual place of performance, and each appears to be part of [Mr. Shipkey's] general territory)." This, however, was error because Mr. Shipkey worked 391.5 hours at the WMATA stations in the District, such that they were "predominantly" or "substantially" more than the 233.5 hours he worked in Virginia or the 193 hours he worked in Maryland. *See Petrilli v. District of Columbia Dep't of Employment Servs.,* 509 A.2d 629, 633–34 (D.C.1986) (interpreting the statutory requirement of "employment principally localized in the District" to require "contacts more substantial here than in any other place" because "such words plainly contemplate the kind of employment which is primarily or predominantly performed in the District."); *see also Furtick v. District of Columbia Dep't of Employment Servs.,* 921 A.2d 787, 793 (D.C.2007) (discussing *Petrilli* and examining whether claimant had "substantial and legitimate contacts with the District").

Because Mr. Shipkey's claim was capable of resolution based upon the first prong of *Hughes,* the CRB and the ALJ erred by finding that the first prong was not dispositive. The error was compounded when the CRB and the ALJ analyzed the second prong, which was inapplicable because Mr. Shipkey's principal services were not performed at non-employer job sites,[6] and resolving the claim based upon the third prong, which was intended to function only as a last-resort catch-all provision for situations where a place of per-

---

6. *See Beulah v. Washington Materials, Inc.,* H & AS No. 84–103 (Jan. 28, 1985) (resolving issue under the second prong of *Hughes* because employee performed his principal service of delivering concrete at third-party job sites in the District and not at or from the employer's facilities where the claimant started his day, loaded his supplies, and clocked out at the end of the day).

formance cannot be determined based upon the facts.[7] The CRB and ALJ erred in this case by resolving the claim based upon Mr. Shipkey's preparation time in Maryland instead of his performance time as a plumber—the job for which he was hired—in the various jurisdictions, of which the principal number of hours were worked in the District. This was not in accordance with the law because of the stated preference in the *Hughes* case to place greater weight on the place of the employee's performance over any other factor. *Hughes, supra,* 498 A.2d at 569 (mandating consideration of place of employee's "principal service(s) for which he was hired" then "place of performance" as the first and second prongs, respectively); *see also Fulmer v. Uniwest Constr.,* H & AS No. 88–75A (Nov. 2, 1990) ("The Director has held that it is appropriate to place greater weight on the factor of place of performance rather than on the factors of place of claimant's residence and place of hire, when an employee spends a substantially greater percentage of his or her work time in one jurisdiction."). Only in the event that there is no client or employer site where the employee performs the principal service for which he was hired, should the third prong of *Hughes,* which focuses on the base of operations, be used. In Mr. Shipkey's case, the application of the third prong would evaluate *only* the ancillary preparatory time for his principal service of plumbing.

■ This analysis and conclusion is also supported by the structure and language of the *Hughes* test. Specifically, the three prongs of the *Hughes* test are set out in a disjunctive ("or"), not conjunctive ("and"), manner. The resolution of a claim under the first prong precludes consideration of the subsequent prongs, resolution under the second prong precludes consideration of the third prong such that the third prong is reached *only if* the first two prongs are not conclusive. *Hughes, supra,* 498 A.2d at 569. The use of "or" instead of "and" suggests that the factors enumerated in each prong are to be considered separately, not in combination. *See, e.g., Garcia v. United States,* 469 U.S. 70, 73, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) ("Canons of construction indicate that terms connected in the disjunctive in this manner be given separate meanings."); 1A Norman J. Singer, Statutes and Statutory Construction § 21.14 at 181–82 (6th ed. 2002) ("courts presume that 'or' is used in a statute disjunctively unless there is a clear legislative intent to the contrary"); *see also* American Heritage Dictionary of the English Language 873 (4th ed. 2000) (defining "or" as "[u]sed to indicate ... [a]n alternative ...").

■ Further, the *Hughes* test distinguishes between—and then creates a hierarchy of preference depending on—the type of facility it is and the type of work that the employee performs there. Specifically, the *Hughes* test considers whether the employee's services for which he was hired are performed at the employer's facility, another location (*e.g.,* a third-party job site), or, in the absence of a finding of the first two, the facility that the employee uses as his base of operations. Since each prong of the test is concerned either with a distinct location and/or a distinct type of service to be performed at that location, the test cannot be read in such a manner as to conflate the inquiry required at each prong. Thus, the first prong evaluates the

---

**7.** *See Guglielme v. U.S. Air,* H & As No. 87–424 (Dec. 8, 1987) (applied third prong of *Hughes* test to flight attendants because there was no employer facility where they per-formed their principal service for which they were hired, which would be their work during flights, and the place of performance was during flight, which crossed state borders).

amount of time the employee spends performing the "principal services for which he was hired" without regard to any ancillary preparatory time in the employer's facilities. In the event that the employee's "place of performance" is not in the employer's facilities, the second prong would evaluate the amount of time the employee spends doing so, again without regard for any ancillary preparatory time.

Therefore, we conclude that the CRB's decision upholding the ALJ's resolution of Mr. Shipkey's claim based upon the third—instead of the first—prong of the *Hughes* test was not in accordance with the law.

### B.

The CRB and ALJ's interpretation of the term "localized principally" is inconsistent with both the Act's language and its humanitarian purpose.

■ As noted *supra*, the Act does not define the term "localized principally." *See* D.C.Code § 32–1503(a)(2). In this vacuum, the ALJ and the CRB have interpreted the term "localized principally" to require proof that a claimant's hours in the District are more than the *combined* hours in the other jurisdictions, *i.e.* that the claimant worked more than 50% of the time in the District irrespective of the number of other jurisdictions in which the claimant works. The ALJ found that even though Mr. Shipkey worked 47.86% of the time in the District, it was not a "clear or significant majority" over the 28.55% of time in Virginia or the 23.59% of time in Maryland. Generally, "[t]he agency's interpretation of the statute it administers is binding upon this court unless it conflicts with the plain meaning of the statute or its legislative history." *Murphy v. District of Columbia Dep't of Employment Servs.*, 935 A.2d 1066, 1070 (D.C.2007) (quoting *Lincoln Hockey LLC v. District of Colum-*

*bia Dep't of Employment Servs.*, 810 A.2d 862, 866 (D.C.2002) (citations omitted)). This is because "the judiciary is the final authority on issues of statutory construction." *Harris v. District of Columbia Office of Worker's Comp.*, 660 A.2d 404, 407 (D.C.1995) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984)).

■ Our first step when interpreting a statute is to look at the language of the statute. *National Geographic Soc'y v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 618, 620 (D.C.1998). We are required to give effect to a statute's plain meaning if the words are clear and unambiguous, *Office of People's Counsel v. Public Serv. Comm'n*, 477 A.2d 1079, 1083 (D.C.1984), because "[t]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc). Furthermore, "in examining the statutory language, it is axiomatic that '[t]he words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.'" *Id.* at 753 (citation omitted).

■ The statutory language of "localized principally" is arguably clear from its common meaning. The common dictionary definition of the term "principal" is "the most important, consequential, or influential." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 987 (11th ed. 2005); *see also* NORMAN SINGER & J.D. SHAMBIE SINGER, 2A STATUTES AND STATUTORY CONSTRUCTION § 47:28 (7th ed. 2007) ("Dictionaries ... provide a useful starting point to determine what statutory terms mean ... [l]ikewise when a popular or common word is used in a statute, but is not defined, the

word should be given its common meaning."). We are cautioned that "aids to interpretation can be used only to resolve ambiguity and never to create it." *Id.* at § 46:4. Here, the ALJ has created an ambiguity—and a hurdle—the statute does not impose by concluding that because Mr. Shipkey worked a "plurality" of hours as opposed to a "majority" of the hours in the District versus the combined hours in other states, his employment was not "localized principally." Indeed, the ALJ noted that the District appeared to be the jurisdiction where Mr. Shipkey worked the most hours (391.5 hours, representing 47.86% of his time), but noted that under the ALJ's definition of "majority," the hours in the District would need to exceed not only the hours in Virginia (233.5 hours, representing 28.55% of his time) or Maryland (193 hours, representing 23.59% of his time) but the hours worked in both states combined (a total of 426.5 hours, representing 52.14% of his time).

Although the statutory language of "localized principally" is arguably clear and unambiguous due to the term's common meaning, we nonetheless address the question whether the CRB's interpretation of the Act is reasonable. We conclude that the agency's interpretation of the term "localized principally" in the Act is unreasonable because it is inconsistent with the legislative intent underlying the Act.

In reviewing the CRB's legal conclusion regarding the interpretation of the Act, we are cognizant that the purpose of workers' compensation law is a humanitarian one designed "to provide financial and medical benefits to employees injured in work-related accidents." *Grayson v. District of Columbia Dep't of Employment Servs.*, 516 A.2d 909, 912 (D.C.1986). "[W]orkers' compensation statutes should be liberally construed to achieve their humanitarian purpose." *Vieira v. District of*

*Columbia Dep't of Employment Servs.*, 721 A.2d 579, 584 (D.C.1998) (citation omitted). The statutory presumption of compensability within the D.C. Workers' Compensation Act is evidence of this humanitarian goal. *See* D.C.Code § 32–1521; *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987).

Indeed, one of the main goals of the District of Columbia Workers' Compensation Act of 1979 was to balance the humanitarian need for compensation against the fact that employees with relatively insubstantial District contacts would file for and receive benefits in the District under the predecessor Federal Longshoremen's and Harbor Workers' Compensation Act. *See Petrilli, supra,* 509 A.2d at 633. The District of Columbia Council balanced these concerns by requiring that "employment [be] principally localized in the District" in order to qualify for compensation, and our court has recognized that "[i]t is enough to say that the term ... requires a showing that a claimant's employment relationship with this jurisdiction must have contacts more substantial here than *in any other place.*" *Id.* (emphasis added). A requirement that the contacts must be substantially more in the District than "in [all other] place[s]" *combined* is not supported by the language or purpose of the statute.

We reverse and remand for proceedings not inconsistent with this opinion.

*So ordered.*